UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**DAVID- JASON GUILLOU**,                                                  CASE NO.:

      Plaintiff,

v.

**TOY TECH MOTORS CORPORATION**
d/b/a SOUTH DADE TOYOTA OF
HOMESTEAD,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES AND JURY DEMAND FOR VIOLATIONS OF FAMILY AND MEDICAL LEAVE ACT

      Plaintiff DAVID- JASON GUILLOU (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, sues Defendant, TOY TECH MOTORS CORPORATION d/b/a SOUTH DADE TOYOTA OF HOMESTEAD (hereinafter "Defendant" or "Toy Tech"), and alleges as follows:

### NATURE OF ACTION

1. This action is brought under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. (Title VII); and the Florida Civil Rights Act §760.01, et seq., Florida Statutes (FCRA); the Americans with Disabilities Act ("ADA"); and Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") to redress Defendant's FMLA violations due to Defendant's unlawful termination of Plaintiff.

### JURIDICTION AND VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 2617 Family and Medical Leave Act (FMLA).

3. The Southern District of Florida, Miami-Dade Division is proper under 28 U.S.C. § 1391 (b)(1) because Defendant is a resident of, has agents, and/or transacts its affairs in this district.

4. Venue is proper because under 28 U.S.C. § 1391 (b)(2) because all or a substantial part of the events giving rise to this cause occurred in this district.

## PARTIES

5. Plaintiff is an individual residing in Homestead, Florida and was a resident of Miami-Dade County, Florida for all times relevant to this action.

6. Defendant is a For Profit Florida Corporation located in Miami-Dade County.

7. At all times relevant to this action, Plaintiff was an employee of Defendant.

8. At all times relevant to this action, Defendant was an employer within the meaning of the FMLA.

9. At all times relevant to this action, Defendant is an employer with 50 or more employees.

## STATEMENT OF FACTS

10. Plaintiff brings forth this action in Federal Court pursuant to the 42 U.S.C. § 1981, FMLA, Title VII and ADA.

11. Defendant hired Plaintiff Guillou in August 2017.

12. Defendant hired Plaintiff GUILLOU to be Defendant's Rent A Car's ("hereinafter referred to as "TRAC") Director/Manager.

13. From Plaintiff GUILLOU'S date of hire until his unlawful termination, Plaintiff GUILLOU received satisfactory feedback from Defendant and the leadership team about his work performance.

14. At all relevant times, Defendant considered Plaintiff GUILLOU to be a good employee.

15. At all relevant times, Plaintiff GUILLOU was the only Black employee in a leadership role at Defendant.

16. At all relevant times, Defendant and Defendant's leadership treated Plaintiff GUILLOU differently because of his race and national origin.

17. At all relevant time, Plaintiff GUILLOU suffered a torn rotator cuff and the resulting surgery is a serious medical condition under the FMLA.

18. In or around March 2018, Plaintiff discovered a torn rotator cuff. Plaintiff was treated for the tear and continued to work.

19. It was later discovered that Plaintiff would require surgery to repair the torn rotator cuff.

20. On or about September 28, 2018, Plaintiff informed Lucy Bendetti (hereinafter referred to as "BENDETTI"), owner of Defendant, of his need for surgery.

21. Surgery to repair the torn rotator cuff was scheduled for October 5, 2018.

22. Mrs. Bendetti requested that Plaintiff attend a Department Head meeting that was scheduled for October 3, 2018 to discuss his absence.

23. On or about October 3, 2018, Defendant was on notice that Plaintiff was entitled to FMLA.

24. On or about October 3, 2018, Plaintiff attended said Department Head meeting where Mrs. Bendetti discussed the plan for coverage while Plaintiff was out, with the understanding that Plaintiff would still be working on whatever he could from home.

25. The majority of Plaintiff's job duties could be accomplished over the telephone and with access to a computer.

26. On or about October 5, 2018, Plaintiff had surgery on his torn rotator cuff.

27. During the time after surgery, Plaintiff continued working for Defendant and communicating with Defendant via email, phone and text messages.

28. Plaintiff continued to receive his regular paycheck by way of direct deposit throughout the month of October.

29. On or about October 28, 2018, Plaintiff received a text message from BENDETTI asking about his recovery and whether he would be able to attend the Department Head's meeting on November 6, 2018.

30. Plaintiff could not attend the November 6, 2018 Department Head's meeting because Plaintiff had a scheduled doctor's appointment for that morning.

31. Plaintiff advised Defendant that he would need additional time in the future to continue attending his scheduled appointments with his doctors to treat his serious medical condition.

32. On or about November 6, 2018, Plaintiff was contacted by Boris Lopez (hereinafter referred to as "LOPEZ"), Defendant's General Sales Manager, asking to meet in person. Plaintiff said yes to the meeting with LOPEZ, however, LOPEZ never responded.

33. On or about November 16, 2018, Plaintiff was not paid by direct deposit as had been the norm for the year Plaintiff had worked for Defendant. Plaintiff was notified that a physical check was in the office and he needed to pick it up by Monday, November 19,2018.

34. On or about November 19, 2018, Plaintiff went to the Human Resources office to get his paycheck. He was told that the check that LOPEZ had the check and the check would be sent by mail.

35. On November 20,2018, Plaintiff was told the check was now in the office, Plaintiff's wife later retrieved the paycheck from LOPEZ.

36. On November 21, 2018, LOPEZ asked Plaintiff for medical documentation to justify his absence.

37. On or about November 26, 2018, Plaintiff sent all relevant medical documents to Malenys Valdes (hereinafter referred to as "VALDES"), Human Resource Manager, via email.

38. On or about November 27, 2018, Plaintiff received an email from VALDES, indicating that she had received the relevant documents.

39. On or about November 27, 2018, Plaintiff's wok email account was deleted.

40. Plaintiff was unable to complete his job duties as a result of not having access to the company email.

41. On or about November 30, 2018, Plaintiff was not paid by Defendant. Plaintiff contacted VALDES. VALDES informed Plaintiff that because he was on FMLA he would not be paid.

42. Plaintiff then asked VALDES for the terms of his FMLA, VALDES then directed Plaintiff to the Employee Handbook for an understanding of FMLA and Defendant's policies relating to FMLA.

43. On or about November 16, 2018, Plaintiff was placed on FMLA leave.

44. On or about December 6, 2018, Plaintiff sent an email to VALDES asking for specifics regarding his current FMLA status. VALDES did not respond.

45. On or about December 10, 2018, Plaintiff sent a second email to VALDES, again, VALDES did not respond to Plaintiff's inquiries regarding his FMLA.

46. Up until Plaintiff's termination, Defendant had not explained to Plaintiffs rights to leave under the FMLA.

47. Defendant replaced Plaintiff GUILLOU with an individual who is Hispanic and significantly younger than Plaintiff.

48. All conditions precedent have occurred or been met, which includes the filing of a charge of discrimination with the U.S. Equal Employment Opportunity Commission prior to one hundred eighty (180) days from the filing of this Complaint and the issuance of a Notice of Right to Sue on December 4, 2019.

49. Defendant discriminated against and terminated Plaintiff GUILLOU on the basis of Plaintiff's disability, race, color, and national origin, and because Plaintiff complained or opposed the unlawful conduct of Defendant related to the above protected classes.

50. Defendant retaliated against Plaintiff GUILLOU for engaging in protected activity.

51. The above are just some examples of the unlawful discrimination and retaliation to which Defendant subjected Plaintiff.

52. Plaintiff GUILLOU claims actual discharge and also seeks reinstatement.

53. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to Plaintiff's professional reputation.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

56. As Defendant's actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendant.

57. Plaintiff further claims aggravation, activation and exacerbation of a preexisting condition.

58. The above are just some examples of unlawful discrimination and retaliation to which the Defendant subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT

**59.** Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 58 and further alleges as follows.

60. Plaintiff claims Defendant violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

61. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

62. Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

63. Plaintiff GUILLOU suffered a torn rotator cuff, which required surgery to repair.

64. Plaintiff notified Defendant of his need for surgery, Defendant acknowledged his request and in turn granted leave.

65. Defendant asked Plaintiff GUILLOU to work during his leave despite Plaintiff GUILLOU'S entitlement to FMLA.

66. Prior to Plaintiff GUILLOU'S surgery to repair his torn rotator cuff, Defendant failed to inform Plaintiff GUILLOU of his entitlement to FMLA.

67. Plaintiff GUILLOU was repeatedly asked when he would be returning to work after his surgery.

68. Shortly after Plaintiff GUILLOU'S surgery, Plaintiff GUILLOU began working remotely as requested by Defendant.

69. Defendant violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of Plaintiff's surgery and the necessary time to recover.

70. Defendant violated the above and Plaintiff suffered numerous damages as a result.

### AS A SECOND CAUSE OF ACTION
### RETALIATION UNDER
### THE AMERICANS WITH DISABILITIES ACT

**71.** Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 58 and further alleges as follows.

72. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

73. Plaintiff GUILLOU informed Defendant and Defendant's BENDETTI of his torn rotator cuff and his surgery.

74. Defendant's BENDETTI made numerous attempts to remove Plaintiff GUILLOU from his

position.

75. Plaintiff GUILLOU objected to Defendant's attempts to remove him from his position.

76. Defendant terminated Plaintiff GUILLOU'S employment with Defendant as a result of his disability.

77. Defendant violated the above and Plaintiff suffered numerous damages as a result.

   **WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

   a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of the ADA;

   b. Issue an order prohibiting further discrimination;

   c. Order equitable relief including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, and all other equitable relief provided in the ADA;

   d. Award Plaintiff all compensatory and liquidated damages provided for in the ADA; and

   e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

### AS A THIRD CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT UNDER
### THE AMERICANS WITH DISABILITIES ACT

78. Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

79. Defendant, BENDETTI and LOPEZ subjected Plaintiff GUILLOU to harassment and the harassment was motivated by Plaintiff GUILLOU'S disability.

80. Defendant and LOPEZ treated Plaintiff GUILLOUS harshly and ultimately terminated Plaintiff GUILLOU because of his disability.

81. The conduct was so severe and pervasive that a reasonable person in Plaintiff GUILLOU'S position would find Plaintiff GUILLOU'S work environment to be hostile or abusive.

82. Defendant failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

**WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of the ADA;

b. Issue an order prohibiting further discrimination;

c. Order equitable relief including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, and all other equitable relief provided in the ADA;

d. Award Plaintiff all compensatory and liquidated damages provided for in the ADA; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

## AS A FOURTH CAUSE OF ACTION
## RACIAL DISCRIMINATION AND HARASSMENT § 1981

83. Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

84. This is an action for discrimination and harassment because of race and national origin under Section 1981. Plaintiff is a Haitian Black man.

85. Plaintiff was the only Black and Haitian in leadership at Defendant.

86. At all times relevant, Plaintiff GUILLOU was treated differently because his race and his Haitian background.

87. After Plaintiff GUILLOU's unlawful termination, Defendant replaced Plaintiff GUILLOU with a white Hispanic male.

88. Defendant and Defendant's LOPEZ subjected Plaintiff GUILLOU to a hostile work environment because he is a Black man.

89. Defendant constantly enforced a purposefully discriminatory pattern and practice of depriving Black individuals of the equal rights described therein, in further violation of 42 U.S.C. §1981.

90. As a result of Defendant's discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling Plaintiff to compensatory damages.

91. As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

92. Defendants violated the above and Plaintiff suffered numerous damages as a result.

93. Plaintiff makes a claim against Defendant under all of the applicable paragraphs of 42 U.S. Code § 1981.

94. Plaintiff claims Defendant both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violated of 42 USC 1981.

> **WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:
>
> a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of 42 U.S.C. § 1981; and
>
> b. Issue an order prohibiting further discrimination; and
>
> c. Order equitable relief including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which he is entitled, or award front pay in lieu of reinstatement, and all other equitable relief provided for in 42 U.S.C. 2000e-5; and
>
> d. Award Plaintiff all compensatory damages provided for in 42 U.S.C. 2000e-5; and
>
> e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

## AS A FIFTH CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT UNDER § 1981

95. Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

96. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

97. The harassing conduct was directly connected to Plaintiff GUILLOU race and national origin.

98. Defendant delegated LOPEZ the supervisory authority to control Plaintiff GUILLOU'S work environment. Defendant abused that authority by creating a hostile work environment. A reasonable person subjected to Plaintiff GUILLOU'S working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

99. Defendant's discriminatory conduct was not welcomed by Plaintiff GUILLOU.

100. As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

101. Defendant failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

102. As a result of Defendant's violations of § 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business

reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of 42 U.S.C. § 1981; and

b. Issue an order prohibiting further discrimination; and

c. Order equitable relief including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which he is entitled, or award front pay in lieu of reinstatement, and all other equitable relief provided; and

d. Award Plaintiff all compensatory damages provided; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER § 1981

103.     Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

**104.**     Defendant, BENDETTI and LOPEZ discriminated against Plaintiff GUILLOU because he was a black Haitian.

**105.**     Plaintiff GUILLOU complained to LOPEZ and BENDETTI about the discriminatory treatment he received based on his race and national origin.

**106.**     Plaintiff GUILLOU was terminated after he complained about the discriminatory treatment based on his race and national origin.

**107.**     Shortly after Plaintiff GUILLOU'S complaints, Defendant terminated Plaintiff GUILLOU.

108.    The retaliatory actions taken against Plaintiff GUILLOU world deter a reasonable person from making or maintaining a complaint of discrimination and/or harassment against Defendant.

109.    Plaintiff has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

**WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of 42 U.S.C. § 1981; and

b. Issue an order prohibiting further discrimination; and

c. Order equitable relief including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which he is entitled, or award front pay in lieu of reinstatement, and all other equitable relief provided; and

d. Award Plaintiff all compensatory damages provided; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

### AS A SEVENTH CAUSE OF ACTION
### RACIAL DISCRIMINATION AND HARASSMENT UNDER
### TITLE VII

110.    Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

111.    Title VII states in relevant part as follows:

(a) Employer practices: It shall be an unlawful employment practice for an employer:

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

112.    Plaintiff GUILLOU'S race and national origin was a motivating factor in the Defendant's treatment of Plaintiff GUILLOU, including but not limited to terminating his employment.

113.    Defendant's LOPEZ intentionally altered Plaintiff GUILLOU'S work environment because of his race.

114.    Defendant treated Plaintiff GUILLOU less favorably than similarly situated employees outside Plaintiff's protected class.

115.    Defendant's LOPEZ intentionally subjected Plaintiff GUILLOU to a hostile work environment on account of Plaintiff GUILLOU'S race and national origin.

116.    Defendant Toy Tech engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

117.    Defendant Toy Tech violated the above and Plaintiff suffered numerous damages as a result.

      **WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

        a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964; and

        b. Issue an order prohibiting further discrimination; and

c. Order equitable relief including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which he is entitled, or award front pay in lieu of reinstatement, and all other equitable relief provided for in 42 U.S.C. 2000e-5; and

d. Award Plaintiff all compensatory damages provided for in 42 U.S.C. 2000e-5; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

**AS AN EIGTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**

118.    Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

119.    The Civil Rights Act of 1964 prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to his or her gender, age, religion, national origin or race.

120.    Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

121.    The harassing conduct was directly connected to Plaintiff GUILLOU'S disability, race and national origin.

122.    Plaintiff GUILLOU did not welcome Defendant's conduct or comments.

123.     Defendant delegated LOPEZ the supervisory authority to control Plaintiff GUILLOU'S work environment. Defendant abused that authority by creating a hostile work environment. A reasonable person subjected to Plaintiff GUILLOU working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

124.     As a result of Defendant's violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

**WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964; and

b. Issue an order prohibiting further discrimination; and

c. Order equitable relief including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which he is entitled, or award front pay in lieu of reinstatement, and all other equitable relief provided; and

d. Award Plaintiff all compensatory damages provided; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

## <u>AS A NINTH CAUSE OF ACTION</u>
## <u>RETALIATION UNDER TITLE VII</u>

125.     Plaintiff realleges and incorporates herein the allegations contained paragraphs 1

through paragraphs 58 above.

126.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a)

provides that it shall be unlawful employment practice for an employer: "(1) to . . .

discriminate against any of his employees . . . because she has opposed any practice made

an unlawful employment practice by this subchapter, or because she has made a charge,

testified, assisted or participated in any manner in an investigation, proceeding, or hearing

under this subchapter."

127.     Shortly after Plaintiff AUGUSTE'S complaints, Defendant's WASLHE terminated

Plaintiff AUGUSTE.

128.     The retaliatory actions taken against Plaintiff AUGUSTE world deter a reasonable

person from making or maintaining a complaint of discrimination and/or harassment

against Defendant.

129.     Plaintiff has been damaged as a direct and proximate result of Defendant's illegal

employment practices, including suffering economic damages, compensatory damages,

emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment

of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

     **WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

          a. Declare that Defendant has unlawfully discriminated against Plaintiff in

          violation of Title VII of the Civil Rights Act of 1964; and

          b. Issue an order prohibiting further discrimination; and

c. Order equitable relief including but not limited to back pay, reinstating Plaintiff with all promotions and seniority rights to which he is entitled, or award front pay in lieu of reinstatement, and all other equitable relief provided; and

d. Award Plaintiff all compensatory damages provided-5; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

## AS A TENTH CAUSE OF ACTION
## FCRA (RACE DISCRIMINATION)

130.    Plaintiff realleges and incorporates herein the allegations contained paragraphs 1 through paragraphs 58 above.

131.    This is an action to recover all damages, interest, equitable relief and attorney's fees and costs on behalf of Plaintiff for violations of his state rights under the Florida Civil Rights Act ("FCRA"), to include the remedies in §760.01, et seq., Florida Statutes.

132.    Plaintiff GUILLOU is an individual of Haitian descent and is therefore a member of protected classes within the meaning of the applicable law.

133.    Plaintiff GUILLOU was the only Haitian and Black employee working in leadership at Defendant.

134.    At all relevant times, Plaintiff GUILLOU was an employee under the FCRA.

135.    Plaintiff GUILLOU is and was protected against discrimination under the FCRA.

136.    At all relevant times, Plaintiff GUILLOU was qualified to do his job and other jobs at Defendant.

137.     At all relevant times, Defendant treated Plaintiff GUILLOU differently because he is black.

138.     Defendant replaced Plaintiff GUILLOU with multiple Hispanic employees.

139.     Defendant's discrimination against Plaintiff GUILLOU was willful or with reckless indifference to his protected rights.

140.     Plaintiff GUILLOU has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

**WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of the FCRA; and

b. Issue an order prohibiting further retaliation; and

c. Order equitable relief including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, and all other equitable relief provided by Fla. Stat. § 760.01, et seq.; and

d. Award Plaintiff all compensatory damages provided for by Fla. Stat. § 760.01, et seq.; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

<u>**AS AN ELEVENTH CAUSE OF ACTION**</u>
<u>**FCRA (DISABILITY DISCRIMINATION)**</u>

141.        Plaintiff realleges and incorporates herein the allegations contained paragraphs 1

through paragraphs 58 above.

142.        This is an action to recover all damages, interest, equitable relief and attorney's fees

and costs on behalf of Plaintiff for violations of his state rights under the Florida Civil

Rights Act ("FCRA"), to include the remedies in §760.01, et seq., Florida Statutes.

143.        Plaintiff GUILLOU is had surgery and was unable to complete daily life activities

therefore a member of protected classes within the meaning of the applicable law.

144.        At all relevant times, Plaintiff GUILLOU was an employee under the FCRA.

145.        Plaintiff GUILLOU is and was protected against discrimination under the FCRA.

146.        At all relevant times, Plaintiff GUILLOU was qualified to do his job and other jobs

at Defendant.

147.        At all relevant times, Defendant treated Plaintiff GUILLOU differently due to his

disability and his necessary accommodations.

148.        Defendant replaced Plaintiff GUILLOU with a member outside of Plaintiff's

protected class.

149.        Defendant's discrimination against Plaintiff GUILLOU was willful or with reckless

indifference to his protected rights.

150.        Plaintiff GUILLOU has been damaged as a direct and proximate result of

Defendant's illegal employment practices, including suffering economic damages,

compensatory damages, emotional pain and suffering, inconvenience, mental anguish,

outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and

tangible injuries.

**WHEREFORE**, Plaintiff demands trial by jury and requests this Court to:

a. Declare that Defendant has unlawfully discriminated against Plaintiff in violation of the FCRA; and

b. Issue an order prohibiting further retaliation; and

c. Order equitable relief including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, and all other equitable relief provided by Fla. Stat. § 760.01, et seq.; and

d. Award Plaintiff all compensatory damages provided for by Fla. Stat. § 760.01, et seq.; and

e. Award Plaintiff his costs, attorney's fees, pre-judgment and post-judgment interest and such other and further relief as the Court deems proper.

## AS A TWEVTH CAUSE OF ACTION
## INTERFERENCE WITH FMLA RIGHTS AGAINST DEFENDANT (FAILURE TO PROVIDE FMLA INFORMATION)

151.    Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 58 and further alleges as follows.

152.    Plaintiff was employed by the Toy Tech, an entity which qualifies as an "employer," as that term is defined in FMLA, 29 U.S.C. § 2611(4), because it is "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," and as such is subject to the FMLA.

153.    Plaintiff was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2)(a), because she has been employed for at least 12 months by Jackson for at least 1,250 hours of service during the [previous] 12-month period.

154.    Defendant Toy Tech was on notice that Plaintiff would be entitled to FMLA on October 3, 2018, as of October 5, 2018.

155.    Plaintiff provided Defendant with the information regarding his serious medical condition as soon as he received it from the treating physician.

156.    Plaintiff's torn rotator cuff and the necessary surgery that followed was a serious medical condition.

157.    On November 16, 2018, Defendant failed to notify Plaintiff of his eligibility status and rights under FMLA, failing to provide Plaintiff of his rights interfered with Plaintiff's rights under the FMLA.

158.    As a result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant, as follows:

a. Enter judgment in Plaintiff's favor and against Defendant for interfering with Plaintiff's rights under the FMLA;

b. Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

c. Award Plaintiff liquidated damages;

d. Award Plaintiff prejudgment interest on her damages award;

e. Award Plaintiff reasonable costs and attorney's fees;

## AS A THIRTEENTH CAUSE OF ACTION
## VIOLATION OF THE FMLA BY DEFENDANT– RETALIATION

**159.**     Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 58 and further alleges as follows.

160.     Toy Tech was on notice that Plaintiff would be entitled to FMLA on October 3, 2018, as of October 5, 2018.

161.     At all times material, Plaintiff provided Defendant with proper notice of his serious medical condition.

162.     Despite knowledge of Plaintiff's entitlement to FMLA and placing Plaintiff on FMLA without notice, the Defendant terminated Plaintiff while he was on FMLA.

163.     Defendant has intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for having been entitled to and further being placed on FMLA.

164.     Plaintiff's need for FMLA and being placed on FMLA was the direct and proximate cost of his termination.

165.     As a result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant, as follows:

a. Enter judgment in Plaintiff's favor and against Defendant for interfering with Plaintiff's rights under the FMLA;

b. Reinstatement or compensatory mental damages;

c. Award Plaintiff actual damages suffered, including back pay, front pay, loss of benefits, future pecuniary loss, and lost future earnings capacity;

d. Award Plaintiff liquidated damages;

e. Award Plaintiff prejudgment interest on her damages award;

f. Award Plaintiff reasonable costs and attorney's fees;

g. Award Plaintiff any further relief pursuant to the FMLA; and

h. Grant Plaintiff such other and further relief, as this Court deems equitable and just.

**AS A FOURTEENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

**166.**     In the alternative, Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 58 and further alleges as follows.

167.     Plaintiff continued to work for Defendant through November 30, 2018.

168.     Defendant last paid Plaintiff on November 17, 2018.

169.     Defendant was aware of the services Plaintiff GUILLOU was providing, of the benefits those services provided and the Plaintiff's expectation of being paid for his work.

170.     Plaintiff GUILLOU maintained constant communication with Defendant and Defendant's leadership throughout the recovery process.

171.     Defendant assigned Plaintiff GUILLOU multiple tasks throughout his recovery, Plaintiff GUILLOU completed each assigned task.

172.     Defendant accepted Plaintiff's services and retained the benefits of those services.

173.     As a result, Defendant has been unjustly enriched. Under the circumstances, it would be inequitable for the Defendant to retain the benefits without paying Plaintiff for the value of his services. In addition, Plaintiff is entitled to a reasonable fee for their services plus reimbursement of this costs associated with this action.

**WHEREFORE**, Plaintiffs alternatively demand judgment against the defendants for the reasonable value of their services and/or the amount by which defendants were unjustly enriched, interest, costs, prejudgment interest and such other relief as the Court deems fair and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury for the claims set forth in the complaint.

Dated: January 23, 2020

Respectfully Submitted,

_/s/ Tiffani-Ruth Brooks_
Tiffani-Ruth Brooks
Fla. Bar No. 1010664
Derek T. Smith Law Group. PLLC
100 SE 2nd Street, Suite 2000
Miami, FLL 33131
Tel: (305) 946-1884
Facsimile: (305) 503-6741
tiffani@dereksmithlaw.com